As to the first objection of the defendant, it is believed the doctrine of estoppel does not apply. It is in the nature of a motion to nonsuit the plaintiff for want of parties. At the time the deed was made there were three persons, the children of the deceased sister, who were, with Mrs. Gamble, entitled to the property of John Gamble. And it is insisted that the deed to Thomas Read conveyed to him only one-half of the slaves therein mentioned, and he was consequently tenant in common with them. When the deed was executed Mrs. Gamble had no legal or several Estate in those particular slaves. Her only claim was for a distributive share of the estate of her brother, John Gamble, which might remain after the payment of his debts. Until the appointment of an administrator, the legal title may be considered in abeyance; but, as soon as letters issue, they vest the property in the administrator and relate back to the death of the intestate. Without his consent or a judgment of a proper court, the next of kin have *Page 297 
no right to intermediate with it. The bill of sale operates only as an equitable assignment of her interest in the whole estate of John Gamble to the value of those slaves. When by the subsequent partition these identical slaves were assigned to the defendant, the title of the plaintiff became complete by estoppel against Mrs. Gamble and all claiming under her. Judge Henderson
in Moore v. Willis, 9 N.C. 559, puts this case: If A bargains and sell to B by indenture, he thereby affirms he had title when he executed the deed. And should a not have the title at the time, but afterwards acquire it in an action against By the latter's title shall prevail, not because A passed to him any title by his deed, but because a is precluded from showing the fact. If this be so, and I presume it cannot be doubted, it puts an end to this objection. The bill of sale professed to pass a legal title to themselves, which the bargainor had not, and she warranted the title. If she had lived until after the partition she could not have maintained an action for them (413) against Thomas Read, and if he had sued her she should have been precluded from denying his title. The other children of the deceased sister could not claim any interest in the slave in controversy, after the distribution under the partition. They could not be made parties to this suit. Their interest would have been antagonistic to Thomas Read's.
The second objection cannot avail the defendant. It is founded upon the idea that, by the decree of the court on the petition, the legal title, of Mrs. Gamble to the slaves in question was established, and the plaintiff's testator, being a party of record, was bound by it and estopped to deny her title. There cannot be a doubt that matters which have once been determined by judicial authority cannot be again drawn into contest between the parties to the determination of their privies. It is equally true that, when the cause of action is the same, the change of the action will not evade the principle. If, therefore, the same question was before the Court in that case as is now controverted between these parties, the plaintiff is estopped. To give to a record, however, this conclusive effect it must appear, amount other things, that the matter averred is inconsistent with it; because, if it be consistent with it, it cannot be an exception. The conveyance by Mrs. Gamble, was but an assignment of her equitable interest in John Gamble's estate to the value of the negroes conveyed. The legal title was in the administrator, and, until the division, it continued there. The petition was to distribute the slave property of John Gamble among his next of kin. Mrs. Gamble, who was his sister, and the testator, Thomas Read, who was one among the children of the deceased sister, were *Page 298 
necessary parties. The only question was as to the division. The petition contained no allegation of any transfer by Mrs. Gamble to Thomas Read. The court did not and could (414) not consider any such question, for it was not put in issue by the pleadings. The plaintiff, then, in averring in this suit that, before that proceeding took place, Mrs. Gamble had assigned to him all her equitable interest in the slaves, is averring nothing inconsistent with the record of that suit. But, again, an allegation in a record, to operate conclusively as an estoppel, must not be uncertain. An estoppel must be certain to every intent. Coke Lit., 303, 3526. "If therefore, a thing be not precisely and directly alleged, it is no estoppel. "The equitable interest of the plaintiff in the slaves was not by the record put in issue, either directly or indirectly; he is not therefore estopped to show the fact. It is admitted that the delivery of the slaves under the decree vested the legal estate in the slaves in controversy in the defendant, as the executor of Mrs. Gamble, but it was there only to feed the estoppel. Such is the case put by Judge Henderson in Moore v. Willis, supra. And such was the decision in Rawlin's case, 4 Coke, 52, in which it was held that if a man leased land in which he had nothing, and afterwards bought the land, such lease would be good against him by conclusion, but nothing in interest, till he bought the land; but as soon as he had bought the land it would become a lease in interest. Christmas v. Oliver, 2 Smith Leading Cases, 417, is to the same effect. The case was that one Ann Stephenson was entitled to an estate in fee upon the contingency of her surviving a certain individual. While the contingency yet continued she and her husband made a lease for a term of years and levied a fine to support it. She survived the tenant for life and the ejectment was brought to recover the term. It was admitted by the defendant that the fine and the recovery operated by way of estoppel, bound the lessors and parties and privies, but it was insisted it did not bind strangers. The Court decided that it bound the lessors by estoppel or conclusion, so long as the (415) contingency continued, and that when the contingency happened the estate that devolved upon them fed the estoppel, and the estate created by the fine ceased to be an estate by estoppel only, and became an interest. 2 Thom. Coke, 488.